+

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL A.,

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 6:23-cv-00394-AR

OPINION AND ORDER

**ARMISTEAD, Magistrate Judge**

    In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Michael A. (his last name omitted for privacy) challenges the Administrative Law Judge's evaluation by failing to identify specific, clear and convincing reasons for discounting his subject symptom testimony and by failing to properly resolve a conflict between the vocational expert's (VE) testimony and the Dictionary of Occupational Titles (DOT). For the reasons explained below, the Commissioner's decision is affirmed.[1]

---

[1] The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28

**ALJ'S DECISION**

Plaintiff applied for Title II Disability Insurance Benefits (DIB) on July 11, 2018, alleging disability beginning on March 13, 2018. (Tr. 249.) His claim was initially denied on March 1, 2019, and again upon reconsideration on August 1, 2019. (Tr. 102, 117-18.) Afterward, plaintiff filed for a hearing that was held before the ALJ on September 22, 2020. Tr. 60.) Plaintiff appealed the ALJ's decision, and the Appeals Council ordered a remand for further proceedings. (Tr. 143-47.) A second hearing was held before the ALJ on October 2, 2021. (Tr. 60.)

In denying plaintiff's application for DIB, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 16.) At step two, the ALJ determined that he had the following severe impairments: lumbar degenerative disc disease with stenosis, moderate right and mild left carpal tunnel syndrome, chronic obstructive pulmonary disease (COPD)/chronic asthma, obstructive sleep apnea, gastroesophageal reflux disease (GERD), and obesity. (Tr. 17.) At step three, the ALJ determined that his impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 19.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 404.1545, the ALJ determined that plaintiff can perform light work with the following exertional and nonexertional limitations: he can stand and walk two hours total in an eight-hour workday;

---

U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – OPINION AND ORDER

can sit at least six hours in an eight-hour workday; can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; should have the use of a cane to ambulate to and from the workstation and stand or sit; can frequently handle, finger, and feel bilaterally; avoid concentrated exposure to airborne irritants such as fumes, odors, dusts, gases, and poor ventilation; and avoid all exposure to hazards such as unprotected heights and exposed moving mechanical parts. (Tr. 21.)

At step four, the ALJ determined that plaintiff cannot perform his past relevant work as a cook. (Tr. 28.) With the RFC in hand, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as cashier, office helper, and garment sorter. (Tr. 29-30.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.  *Basis for Discounting Plaintiff's Testimony*

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*,

Page 3 – OPINION AND ORDER

871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo v. Berryhill*, 871 F.3d 664, 678-79 (9th Cir. 2017).

The ALJ discounted plaintiff's subjective symptom testimony because: (1) his conditions improved with treatment; and (2) his statements were inconsistent with his medical records.

**1. Treatment**

The ALJ discounted plaintiff's subjective symptom testimony because his back pain, carpal tunnel, COPD, and GERD improved with treatment, and he had periods of noncompliance with that treatment. (Tr. 23-26.)

The ALJ relied on reports of plaintiff's acknowledgements that his conditions were improving with treatment. (Tr. 23-26.) In the decision, the ALJ noted instances of improvement and noncompliance: Plaintiff was noncompliant with physical therapy despite reporting pain relief from January to August 2019; he declined further back pain intervention—cortisone injections and nerve block therapy—in August 2019; his carpal tunnel improved with braces and a left wrist injection in January 2020; his COPD/chronic asthma saw moderate and marked improvement with immunotherapy treatments for his allergies along with albuterol and Trelegy for his cough in June 2020; and Omeprazole and a sinuplasty led to marked improvement in his

Page 4 – OPINION AND ORDER

GERD symptoms in July 2020. (Tr. 23-26, citing Tr. 756, 772, 775, 781, 840, 845, 853, 878, 881.)

Plaintiff argues that the ALJ's findings do not consider his medical records showing that he has severe canal stenosis at L2-3, mild congenital spinal canal stenosis at L3-4, and a slight disc bulge at L4-5, as well as inconsistent neurological exams showing muscle weakness and sensation change as well as normal muscle strength support that his lumbar degenerative disc disease and subsequent pain are disabling. (Pl.'s Br. at 10, ECF 10.) Plaintiff further argues that, although pool therapy relieved his pain, the relief was not sustained outside the pool. (Pl.'s Br. at 10, ECF 10.)

The ALJ, however, properly discounted plaintiff's reported symptoms. Although plaintiff testified to suffering from major back pain, and that it affected his ability to sit, stand, and walk for any length of time, his physical therapy records from January to August 2019 show that he admitted the therapy was working, offering immediate relief when he participated in pool therapy. (Tr. 772, 775.) Plaintiff's argument that pain relief was not sustained outside the pool is correct but incomplete. That is because plaintiff only attended physical therapy sporadically, with a total of ten visits and seven missed appointments, and he did not sustain his at home exercises, which provided relief. (Tr. 772.) As noted by the ALJ, plaintiff also endorsed pain relief from a combination of heat, anti-inflammatories, and narcotic pain medication. (Tr. 23, citing Tr. 508.) Plaintiff also declined more aggressive treatment in the form of spinal cortisone injection and nerve block therapy, choosing to remain in physical therapy. (Tr. 775.) Plaintiff's ability to obtain relief with treatment, inconsistent participation in treatment, and declining more aggressive treatment undermine his complaints of disabling pain and serve as specific, clear and convincing reasons to discount his pain testimony. See *Tommasetti,* 533 F.3d at 1039-40 (holding

Page 5 – OPINION AND ORDER

that responding favorably to conservative treatment, such as physical therapy, undermines reports regarding disabling nature of pain); *see Parra,* 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting subjective pain complaints where petitioner's "claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received").

For carpal tunnel, plaintiff argues that a nerve study showing moderate right and mild left carpal tunnel syndrome, some normal strength in his upper extremities, and positive Tinel's and Phalen's tests support his disabling complaints. (Pl.'s Br. at 11, ECF 10.) Plaintiff further argues that his improvement with braces, an injection, and a declination of surgery did not serve as specific, clear and convincing reasons to discount his testimony. (Pl.'s Br. at 11, ECF 10.) Plaintiff's argument is unavailing.

Plaintiff's reported symptoms of carpal tunnel include pain, difficulty grasping and holding objects, numbness in his hands and arms, and difficulty lifting anything more than a gallon of milk. (Tr. 75, 308, 311.) Nerve conduction studies done on September 17, 2019, revealed moderate right carpal tunnel syndrome and mild left carpal tunnel syndrome. (Tr. 889.) Examinations also show that he reported 0/10 pain in November 2019 before receiving braces, and 3/10 in January 2020 before receiving an injection in his left wrist. (Tr. 878, 881, 883, 889.) Testing revealed that he has 5/5 grip strength in both hands with no evidence of neuropathy, some decreased sensation in the first three digits of his right hand, and sensation to pinprick subjectively decreased in a patchy distribution through the hands and arms. (Tr. 739, 747.) Normal grip strength in both hands, favorable response to the use of braces, an injection, and

Page  6  – OPINION AND ORDER

declining of more aggressive treatment in the form of surgery all serve as specific, clear and convincing reasons to discount plaintiff's disabling complaints related to his carpal tunnel.

For his COPD/asthma, plaintiff argues that his COPD/asthma responding to medication, his improved cough, improved allergies, and recent pulmonary function test showing only mild restrictive airway disease are not specific, clear and convincing reasons to discount his testimony. (Pl.'s Br. at 11-12, ECF 10.) The court disagrees.

Plaintiff explained that his labored breathing was caused by his COPD and chronic asthma. When working in a kitchen, he said that "if you're not able to breathe, well, you're in a lot of trouble because of the heat and everything" and that if he is constantly struggling to breathe, he "tend[s] to throw up and that's not really something you want to be doing in a job." (Tr. 78-79.) He also stated that he was using his BiPAP machine eight or nine hours a day, every day, and that he uses it not just at night. (Tr. 79.) Treatment notes from June 2019 show his chronic cough was moderately improved with treatment, that he was no longer experiencing vomiting episodes, and that his allergies were markedly improved following immunotherapy. (Tr. 756.) His records also show that, although he has mild restrictive airway disease and experienced shortness of breath only with significant exertion, his reported "significant improvement" of his condition resulted in greater exercise capacity, a reduction in the frequency of his cough, and a reduced frequency in use of his rescue inhaler. (Tr. 756, 840.) Plaintiff's improvements with treatment serve as specific, clear and convincing reasons to discount his testimony.

Lastly, plaintiff argues that the ALJ did not sufficiently address his obstructive sleep apnea, GERD, and obesity. (Pl.'s Br. at 12, ECF 10.) Yet plaintiff does not point to any specific

error or evidence that the ALJ overlooked. The court need not address this undeveloped argument. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

In sum, the ALJ appropriately discounted plaintiff's testimony regarding his pain, carpal tunnel, and COPD/asthma because he improved with treatment.

### 2. Inconsistency with Medical Records

The ALJ discounted plaintiff's subjective symptom testimony based on inconsistencies with the medical record. Inconsistency with the medical record can provide a clear and convincing basis for discounting a claimant's symptoms, so long as it is not the sole reason for doing so. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

Plaintiff argues that the ALJ erred because his reported symptoms of severe back pain, limited ambulation, and limited ability to stand are not inconsistent with his medical records. The court is not persuaded.

Plaintiff testified that he was bedridden for 90 percent of the day due to back pain, that he can only stand for 15 minutes, and that he can only sit for 10-15 minutes before needing to change position. Medical records stated, and the ALJ found, that plaintiff has moderately severe central canal stenosis at L2-3, mild congenital spinal canal stenosis at L3-4, and a slight disc bulge at L4-5. (Tr. 23, citing Tr. 443, 448, 511.) The ALJ also found that plaintiff regularly reported gait problems related to lower back pain, right lower extremity weakness, and that he used a one-handed, single-point cane for ambulation and for rising from a seated position. (Tr. 23, citing Tr. 502, 508, 510, 765, 767, 770, 777, 783, 796, 801, 949, 957, 991-92, 998, 1003, 1017.) Despite those findings, plaintiff's records show that in August and December 2019, plaintiff had 5/5 strength in his lower extremities with some decreased sensation on his left rather than his right, that in October 2020 he had normal range of motion with no sensory deficits, and

Page  8  – OPINION AND ORDER

in April 2021 his spine had no tenderness to palpation. (Tr. 735, 742, 967, 1010.) His records also show that he was a poor participant in physical therapy, that physical therapy resulted in both immediate relief and improved pain symptoms, and that plaintiff only sometimes participated despite the benefits. (Tr. 505, 765, 767, 772, 775, 781.) Furthermore, although plaintiff reported severe back pain, he declined more aggressive treatment, such as cortisone injections and nerve block therapy, opting instead to continue with physical therapy. (Tr. 775, 781.)

Plaintiff also argues that the objective medical evidence supports additional limitations due to carpal tunnel, pointing to his impaired ability to lift more than a gallon of a milk and numbness in both sets of arms and hands. The ALJ did find that plaintiff's records support some level of limitation due to carpal tunnel, reflected in test results showing moderate right and mild left carpal tunnel syndrome. (Tr. 24, citing Tr. 739.) The ALJ also found that despite his carpal tunnel syndrome, records from October and November 2019 show that he retained 5/5 strength in his upper extremities as well as normal grip strength, no neuropathy or radiculopathy, intact and symmetrical reflexes bilaterally, and only some subjective decrease in sensitivity in a patchy distribution throughout the arms and hands. (Tr. 24, citing Tr. 738, 884, 906.) As the ALJ discussed, records from January 2020 also show that he improved with treatment using braces and injection therapy for his left wrist. (Tr. 24, citing Tr. 878, 881, 884.); (Tr. 310.)

Plaintiff's arguments about his COPD/chronic asthma, sleep apnea, and GERD related symptoms have already been addressed and will not be rehashed here. Given the above information, plaintiff's argument that the ALJ's reasoning lacks specificity is not supported by the record. Although plaintiff may wish for a different reading or even more specificity, the

Page 9 – OPINION AND ORDER

ALJ's findings are supported by substantial evidence and cannot be second-guessed. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)

**B.     *Plaintiff's Mental Health Symptoms***

The ALJ discussed plaintiff's major depressive disorder and generalized anxiety disorder at step two and determined that they were nonsevere. Plaintiff argues that the ALJ erred by failing to account for his mental health limitations when formulating his RFC. (Pl.'s Br. at 10.) But plaintiff does not point to limitations or evidence that the ALJ should have, but did not, consider. The court does not address this undeveloped argument. *Carmickle*, 533 F.3d at 1161 n.2.

\ \ \ \ \

\ \ \ \ \

**C.     *Step Five***

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [his] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R. § 404.1520(g). In making that determination, the ALJ relies on the Dictionary of Occupational Titles (DOT), which is the Social Security Administration's "primary source[] of reliable job information" about jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. §§ 404.1569, 404.1566(d)(1).

The ALJ relies on the testimony of a vocational expert (VE) to identify specific occupations that a claimant can perform in light of her RFC. 20 C.F.R. § 404.1566(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). When there is an apparent conflict between the vocational expert's testimony and the DOT, the ALJ is required to reconcile

that inconsistency by posing questions about the potential conflict. *See Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Even so, if the ALJ fails to ask the vocational expert about the potential conflict, that "procedural error" may be "harmless" if there is no conflict between the vocational expert's testimony and the DOT. *Id*. at 1154 n.19.

Here, the ALJ found at step five that plaintiff could perform the occupations of cashier (DOT #211.462-010), office helper (DOT #239.567-010), and garment sorter (DOT #222.687-014). Each of those occupations is listed as unskilled, light work, and total about 155,187 jobs in the national economy, representing a decreased total based on a person with plaintiff's RFC, as testified to by the vocational expert. (Tr. 29-30.) Plaintiff asserts that the ALJ failed to reconcile an alleged conflict between the VE's testimony and the DOT, and that failing to resolve that conflict would have resulted in an inability to identify jobs in the national economy plaintiff could perform. Plaintiff alleges a conflict between the use of a cane and light exertional requirements of lifting and carrying up to 20 pounds. (Pl.'s Br. at 7, ECF 10.)

Plaintiff's argument is unpersuasive. The alleged conflict arose because of a hypothetical put forth by plaintiff. In the hypothetical, plaintiff asked if both use of a cane for ambulating to and from the workstation, as well as standing and sitting, and a limitation to lifting and carrying no more than 10 pounds would eliminate the identified occupations. (Tr. 56.) The VE testified that a less than 10-pound lifting and carrying limitation combined with use of a cane would eliminate all of the identified jobs above. (Tr. 56.) Plaintiff's argument fails for two reasons: (1) his RFC does not contain a lifting and carrying limitation of no more than 10 pounds; and (2) the ALJ resolved the conflict between cane use and the light exertional lifting and carrying requirement through the VE's testimony.

As for the first reason, an ALJ is not "bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." *Magallenes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986)). The ALJ is "free to accept or reject these restrictions . . . as long as they are supported by substantial evidence." *Martinez*, 807 F.2d at 774. Plaintiff's RFC does not include a 10-pound lifting and carrying restriction, and plaintiff does not argue for that limitation. And so the ALJ was not required to consider that limitation when questioning the VE.

As for plaintiff's second reason, the conflict between cane use and light exertional lifting/carrying requirement of up to 20 pounds, the ALJ resolved this conflict by questioning the VE. The ALJ proposed a hypothetical to the VE containing all the limitations present in plaintiff's RFC, including use of a cane to ambulate to and from his workstation. (Tr. 50-51.) The VE responded that plaintiff could perform three jobs: cashier with 569,000 jobs; garment sorter with 9,662 jobs; and office helper with 13,649 jobs. The VE then reduced the job numbers for the cashier to 142,383 to eliminate jobs that would not allow sitting, and then reduced the numbers for office helper to 6,824 to eliminate jobs that required "more frequent on the feet." (Tr. 51-52) The VE did not reduce the number of jobs for garment sorter. The ALJ asked if the VE's testimony was consistent with the DOT, to which the VE responded that it was, except for the use of a cane to and from the workstation. (Tr. 54.) That was based on her 35 years of experience, including observations of those needing assistance with walking, such as using a cane, in the identified occupations. (Tr. 54-55.) Plaintiff added another limitation to the ALJ's hypothetical, use of a cane to rise from sitting. (Tr. 55.) The VE testified that that limitation would not affect the cashier or garment sorter, but that it would become "problematical" for the office helper "when someone is carrying any items from their workstation to another area." (Tr.

Page 12 – OPINION AND ORDER

55.) The VE then further reduced the number of jobs for office helper to 3,412. (Tr. 55.) Thus, when considering the use of a cane, the VE identified 155,457 jobs in the national economy that plaintiff can perform. Following the hearing, the ALJ asked the VE to confirm her testimony via interrogatories, which she did. (Tr. 372, 383.) Given the VE's testimony, and the confirmation provided via interrogatory, the ALJ resolved any conflict between the DOT's light exertional lifting requirement of up to 20 pounds and the use of a cane.

Plaintiff relies on *Giancone v. Colvin*, Case No. 3:12-cv-00495-JE, 2013 WL 4521123, at *11 (D. Or. Aug. 26, 2013), to bolster his argument that use of a cane precluded him from fulfilling the light exertional lifting and carrying requirement. In *Giancone*, the VE testified that use of a cane precluded the ability to carry, and that the jobs identified in the light work category, document scanner, cashier, and extruder, required no carrying, creating a direct conflict with the DOT. (*Id.*) As noted in that case, the "DOT does not except the light exertional level extruder and cashier positions from this requirement." (*Id.*) Because the VE failed to explain why the extruder and cashier required no carrying and failed to explain the "divergence between" the DOT's requirements and his assertion that no carrying was required, the ALJ erred by relying on the VE's testimony. (*Id.*) *Giancone* is distinguishable from plaintiff's case because the VE provided testimony explaining any apparent conflict between the light exertional lifting and carrying requirement and the DOT, and the ALJ was justified in relying on her testimony.

Plaintiff also argues that the conflict between the general light exertional lifting requirements and use of cane would eliminate the cashier job, thus reducing the total number of jobs in the national economy to below that required to satisfy a "significant number," again relying on *Giancone*. (Pl.'s Br. at 7.) *Giancone* is again distinguishable. It is unknown which cashier position was at issue in *Giancone*. The Cashier II position identified by the VE here does

Page 13 – OPINION AND ORDER

not include "carrying" within the DOT description. *See* DICTIONARY OF OCCUPATIONAL TITLES, 211.462-010, *available at* 1991 WL 671840 (describing exerting force and pushing and pulling). In *Giancone*, the VE failed to explain the apparent conflict regarding carrying. 2013 WL 4521123, at *11. Unlike *Giancone*, the VE here relied on her decades of experience and observations to explain any conflict—she testified and confirmed via interrogatory that the cashier and garment sorter positions would not be reduced when using a cane for rising from sitting to standing, but did reduce the officer helper job numbers to account for "carrying." (Tr. 55.) For those reasons, *Giancone* is not persuasive. The ALJ did not err.

In sum, the ALJ properly relied on the VE's testimony to resolve any apparent conflict with the DOT and, therefore ALJ's step five finding is supported by substantial evidence.

## CONCLUSION

For the above reasons, the court AFFIRMS the Commissioner's final decision, and this action is DISMISSED.

ORDERED on May 3, 2024.

                                                                           JEFF ARMISTEAD
                                                               United States Magistrate Judge